642 A.2d 384

CARL HOROSZ AND MARY HOROSZ, HIS WIFE, PLAINTIFFS–RESPONDENTS, v. ALPS ESTATES, INC., A NEW JERSEY CORPORATION, JACOB KURZER AND DAVID ROSEN, JOINTLY, SEVERALLY OR IN THE ALTERNATIVE, INDIVIDUALLY, DEFENDANTS–APPELLANTS.

Argued March 28, 1994—Decided June 13, 1994.

*Thomas R. Raimondi* argued the cause for appellants (*Diamond, Afflitto and Raimondi,* attorneys).

*Edward J. Bowen* argued the cause for respondents.

*Dennis A. Estis* argued the cause for *amicus curiae,* New Jersey Builders Association (*Greenbaum, Rowe, Smith, Ravin & Davis,* attorneys; *Mr. Estis* and *Ellen A. Silver,* on the brief).

The opinion of the Court was delivered by

GARIBALDI, J.

This appeal concerns the narrow question whether *N.J.S.A.* 2A:14–1.1 prohibits a homeowner from recovering against a builder-developer for that builder's subsequent repair work. Specifically, we address whether the ten-year statute of repose bars a lawsuit brought ten years after the initial construction of the house, but within ten years of the builder-developer's substantial repairs to the house.

I

On June 14, 1977, plaintiffs, Carl and Mary Horosz, purchased a home at 19 Stagg Road, Wayne, New Jersey, from defendant Alps Estates, Inc. ("Alps"), a builder-developer. In 1981, the Horoszes experienced problems with the house. In particular, they felt cold air coming into the house from the washroom in the right rear of the dwelling. As a result, the Horoszes contacted Jacob Kurzer, a representative of Alps.

Alps began repair work on the house in October 1982. Thomas E. Tully, a "soil engineer," performed "test borings" of the soil underneath the right rear of the house. Tully discovered that that section of the house had been constructed on fill, thereby causing the house to sink. To prevent the house from sinking further, Alps inserted concrete and steel in the ground under that part of the house and replaced the foundation. Alps did not insert concrete and steel under the entire house. The Horoszes claim that they asked Alps to underpin the entire house but that Alps assured them that shoring up the fill under part of the house was sufficient to prevent continued sinkage. Alps completed that "underpinning" process on January 26, 1983, and all related work by April 25, 1983, and did not charge the Horoszes for the work.

The Horoszes and Alps did not communicate further until January 1989 when the Horoszes once again felt cold air blowing through the house. Mrs. Horosz discovered that the wind was coming from a bedroom window that would not close because one side of the window frame tilted below the other. Mrs. Horosz also noticed that the garage doors were not properly aligned and that the floors in two of the bedrooms slanted downward from right to left.

The Horoszes again communicated with Jacob Kurzer, the Alps representative, and he examined the premises on May 3, 1989. According to the Horoszes, Kurzer promised to have the house inspected and to provide a report within two weeks. Alps, however, did nothing further.

The house continued to deteriorate. The Horoszes hired a company to jack-up the house and to excavate to determine the source of the problem. The excavation revealed that the source of the sinkage was fill under the foundation. The excavators discovered the fill a few feet away from the spot at which Alps had stopped its work in April 1983.

The Horoszes initiated this lawsuit on September 28, 1989, alleging that Alps had negligently repaired the house in 1983, knowingly concealed a material fact, violated the Consumer Fraud

Act, and had breached express and implied warranties. Alps'
answer included a defense based on *N.J.S.A.* 2A:14–1.1, the ten-
year statute of repose.

Prior to trial, the trial court, after a hearing on the applicability
of *N.J.S.A.* 2A:14–1.1, ruled that the statute applied and that the
ten years had begun to run when title passed from Alps to the
Horozes in 1977. The trial court therefore dismissed the com-
plaint.

On the Horoszes' appeal, the Appellate Division reversed and
remanded the case for trial. 266 *N.J.Super.* 382, 629 *A.*2d 1350
(1993). The Appellate Division agreed with the trial court that the
statute of repose applied. However, it concluded that because the
defect had arisen from the 1983 repair work and not from the
original construction completed in 1977, the statute had started to
run in April 1983 at the conclusion of Alps's repairs. *Id.* at 385,
629 *A.*2d 1350. We granted defendants' petition for certification,
134 *N.J.* 565, 636 *A.*2d 522 (1993), and now affirm.

## II

As the trial court and the Appellate Division held, *N.J.S.A.*
2A:14–1.1, the ten-year statute of repose, applies. *N.J.S.A.* 2A:14–
1 was enacted in 1967, *L.*1967, *c.* 59, ¶ 1, and is similar to
legislation enacted in thirty other states. *See Newark Beth Israel
Hosp. v. Gruzen,* 124 *N.J.* 357, 362, 590 *A.*2d 1171 (1991). The
purpose of the statute of repose was to limit the expanding
liability of contractors, builders, planners, and designers, *see id.* at
362, 590 *A.*2d 1171 (stating, "we have concluded that the Legisla-
ture enacted the statute in response to the expanding application
of the 'discovery rule' . . ., the abandonment of the 'completed and
accepted rule' . . ., and the expansion of strict liability in tort for
personal injuries caused by defects in new homes to builder/sellers
of those homes"); *see also E.A. Williams, Inc. v. Russo Dev.
Corp.,* 82 *N.J.* 160, 164–65, 411 *A.*2d 697 (1980) (discussing history
and purpose of statute); *O'Connor v. Altus,* 67 *N.J.* 106, 117, 335
*A.*2d 545 (1975) (same); *Rosenberg v. Town of N. Bergen,* 61 *N.J.*

190, 195–98, 293 *A.*2d 662 (1972) (same). Based on that legislative purpose, we have tended to read the statute broadly. *See, e.g., Newark Beth Israel Hosp., supra,* 124 *N.J.* at 363, 590 *A.*2d 1171; *Rosenberg, supra,* 61 *N.J.* at 198, 293 *A.*2d 662.

*N.J.S.A.* 2A:14–1.1 provides:

No action whether in contract, in tort, or otherwise to recover damages for any deficiency in the design, planning, supervision or construction of an improvement to real property, or for an injury to property, real or personal, or for an injury to the person, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained on account of such injury, shall be brought against any person performing or furnishing the design, planning, supervision of construction or construction of such improvement to real property, more than 10 years after the performance or furnishing of such services and construction.

Both the original design and construction of the home and the subsequent repair in 1983 constituted "improvements to real property" within the meaning of *N.J.S.A.* 2A:14–1.1. Neither of the parties disputes that. Accordingly, neither party disputes that any liability related to the sinking of the house that arose from the original design and construction of the house is within the ambit of the ten-year statute of repose.

Similarly, the 1983 repair work amounted to an independent "improvement to real property" within the meaning of *N.J.S.A.* 2A:14–1.1. The 1983 repairs were substantial in nature. The house was lifted off its original foundation and a steel framework was constructed beneath part of the house to prevent continued sinkage. That "underpinning" was essential to the continued habitability of the house. Those significant repairs fit precisely within the scope of the phrase "improvement to real property."

Even less-significant alterations and additions are considered "improvements to real property." In *Brown v. Jersey Central Power & Light Co.,* 163 *N.J.Super.* 179, 394 *A.*2d 397 (1978), *certif. denied,* 79 *N.J.* 489, 401 *A.*2d 244 (1979), the Appellate Division found that the installation of a free-standing electrical transfer switch was an "improvement to real property." The Appellate

Division reached its conclusion by reasoning that the electrical transfer switch "constituted a permanent part of one of the mechanical systems necessary to the normal function of this particular improvement to the real estate." *Id.* at 196, 394 *A.*2d 397; *see Rosenberg, supra,* 61 *N.J.* at 198, 293 *A.*2d 662 (stating that repaving road constitutes improvement to real property); *Wayne Township Bd. of Educ. v. Strand Century, Inc.,* 172 *N.J.Super.* 296, 300, 411 *A.*2d 1161 (App.Div.1980) (holding that installation of dimmer panel in new auditorium was improvement to real property because it was required for structure to function as intended); *Hall v. Luby Corp.,* 232 *N.J.Super.* 337, 339, 556 *A.*2d 1317 (Law Div.1989) (holding that installation of elevator was improvement to real property because removal of elevator would materially damage property); *see also Stix v. Greenway Dev. Co.,* 185 *N.J.Super.* 86, 89, 447 *A.*2d 577 (App.Div.1982) (applying *N.J.S.A.* 2A:14–1.1 to defendant's alleged negligent workmanship, which caused collapse of basement foundation wall and consequent undermining of entire building). Such an integral addition or alteration must be contrasted with "equipment[ ] or chattels brought into a structure after it is architecturally and mechanically suitable for occupancy for the purpose intended." *Brown, supra,* 163 *N.J.Super.* at 197, 394 *A.*2d 397.

■ Only construction and designs of improvements to real property "that result in unsafe and defective conditions implicate the statute." *Newark Beth Israel Hosp., supra,* 124 *N.J.* at 364, 590 *A.*2d 1171. In *Newark Beth Israel Hosp.,* we concluded that the design of the hospital in question implicated the statute because the owner had to incur substantial costs in redesigning the building, because absent the alterations the hospital could not be used for its intended purpose, and because the alterations went beyond "expensive and inconvenient changes based on efficiency to measures necessary and proper to ensure safety." *Id.* at 365, 590 *A.*2d 1171.

■ Similar to the original design and construction of the Horoszes' home, the April 1983 alterations resulted in an unsafe

and defective condition, thereby implicating the statute. The "underpinning" was integral to the house as a structure. Without it, the house could not function as intended, that is, the Horoszes could not live in it. Moreover, the underpinning went beyond "expensive and inconvenient changes based on efficiency to measures necessary and proper to ensure safety." *Ibid.* Unlike the surveyor's error in *E.A. Williams, supra,* 82 *N.J.* at 172, 411 *A.*2d 697, the 1983 defective underpinning caused both the house's functional impairment, with consequential economic losses, and a hazardous condition. Thus, we conclude that the 1983 underpinning also constituted an "improvement to real property" within the meaning of *N.J.S.A.* 2A:14–1.1.

### III

Whether *N.J.S.A.* 2A:14–1.1 bars the Horoszes' claim against Alps, however, depends on when the statute began to run, which in turn depends on whether the Horoszes' claim relates to defects Alps made in its original construction or to defects Alps made in its subsequent repair work. With respect to any deficiency in the original design, planning, supervision, or construction of the house, the statute began to run on the "final date the person claiming repose and immunity from suit furnishe[d] any and all services or construction [that] it ha[d] undertaken at the job site." *Welch v. Engineers, Inc.,* 202 *N.J.Super.* 387, 397, 495 *A.*2d 160 (App.Div.1985).

Accordingly, *N.J.S.A.* 2A:14–1.1 began to run on completion of the original construction of the house in 1977. To the extent the Horoszes' cause of action alleged any deficiency in the initial design and construction of the house, the statute of repose would bar it because their claim was filed on September 28, 1989, more than ten years after the completion of construction. For example, had the Horoszes alleged that their roof had been defectively designed or constructed, that claim would be barred despite Alps' repairs to the house in 1983. *See Richards v. Union Bldg. & Constr. Corp.,* 130 *N.J.Super.* 127, 130, 325 *A.*2d 831 (App.Div.

1974) (holding that contractor that performed work on portion of highway more than ten years before occurrence of accident thereon was not liable for injury resulting from its negligence simply because sometime within ten years of accident it had performed work on different portion of same highway).

■ Alps asserts that the defect at issue—namely, the fill underlying the foundation—was a defect exclusively related to its original construction of the house and totally unrelated to its subsequent repairs. We disagree. Fairly read, Horoszes' complaint alleges that Alps negligently performed the underpinning in 1983. According to the Horoszes, Alps should have underpinned the entire foundation in 1983. The sinkage that the Horoszes discovered in 1983 was only a few feet from the sinkage that they had discovered in 1989. Because the 1983 repairs independently implicate *N.J.S.A.* 2A:14–1.1, and in view of the Horoszes' allegation that Alps negligently performed those repairs, the statute of repose with respect to those repairs began to run on April 23, 1983, the date that Alps completed all work related to the underpinning. Thus, the ten-year period had not run by the time the Horoszes initiated this lawsuit.

We find without merit Alps's assertion that permitting this lawsuit to go forward would unfairly transform its voluntary repair work in 1983 into a tolling of *N.J.S.A.* 2A:14–1.1. This holding does not toll the statute of repose. Any deficiency regarding the initial design or construction of the house may not now form the basis of a lawsuit. Yet, any deficiency related to a subsequent improvement of the property may form the basis of a lawsuit, provided that the property owner commences such an action within ten years of the completion of that improvement.

Because the Horoszes filed their complaint within the requisite time, their suit must be permitted to go forward. As is any other builder, Alps is liable for a defect that appears within ten years of the completion of its improvement to real property. As the Appellate Division noted, had someone other than Alps, the original contractor-developer, performed the 1983 underpinning, the

statute would clearly have run from the date of such repair. 266 *N.J.Super.* at 386, 629 *A.*2d 1350. "The mere fact that the builder performed the 1983 repairs, rather than a new contractor, makes no difference in the legal principles applicable here." *Ibid.*

### IV

When a builder-developer performs repairs that constitute an improvement to real property after the initial construction has been completed, the owner has ten years from completion of the repair work to file an action against the builder-developer for defects relating *solely* to that repair work. With respect to defects unrelated to such repairs (defects resulting from the original construction), however, *N.J.S.A.* 2A:14–1.1 runs from the date of the completion of the initial construction of the home. Because the Horoszes' complaint alleges that Alps negligently performed the 1983 underpinning, their claim is not barred by *N.J.S.A.* 2A:14–1.1.

We affirm the judgment of the Appellate Division.

*For affirmance*—Justices CLIFFORD, HANDLER, POLLOCK, O'HERN and GARIBALDI—5.

*Opposed*—None.