17 A.3d 283 (2011)
419 N.J. Super. 459
PORT IMPERIAL CONDOMINIUM ASSOCIATION, INC., Plaintiff-Appellant,
v.
K. HOVNANIAN PORT IMPERIAL URBAN RENEWAL, INC., Defendant-Appellant, and
U.S. Wick Drain, Inc., New Jersey Drilling Co., and Drainage and Ground Improvement, Inc., Defendants-Respondents, and
Barton & Associates, Inc., Paulus, Sokolowski & Sartor, Inc., Addablock Limited, Inc., All-Tech Carpentry Contractors, Breese Corporation, Charles Kane, Inc., Quality North, Blue Ribbon Roofing and Siding, Densification, Inc., and Weintraub Organization, Ltd., Defendants.
K. Hovnanian Port Imperial Urban Renewal, Inc., Third-Party Plaintiff-Appellant,
v.
Addablock Limited, Inc., AllTech Carpentry Contractors, Breese Corporation, Charles Kane, Inc., Component Technology, and Quality North, Third-Party Defendants.
All-Tech Carpentry Contractors, LLC, Fourth-Party Plaintiff,
v.
ABC Carpentry, JMP Carpentry a/k/a JMP Construction, LLC, Preferred National Insurance Company, Pedro M. Souza, Farmers Mutual Insurance Co., Luis M. Guallpa d/b/a Guallpa's Carpentry, Colony National Insurance *284 Co., Lloyds of London a/k/a Underwriters of Lloyds, Terra Nova Insurance Co., Burlington Insurance Company, N & C Carpentry, Sul-Minas Construction, Inc., Thunder Company, Preserver National Insurance Co., Marco A. Guallpa, Selective Insurance, Maringa Construction Co., Calvert Insurance Co., Portech Contractor Corp., Alea London, Ltd., Skyline Framing, Inc., Travelers Insurance Co., Fairbanks Service Co., Quincy Mutual, Globtech, and Anglo American Ltd., Fourth-Party Defendants.
Selective Insurance Company of America, Fifth-Party Plaintiff,
v.
Markel Insurance Company, Fifth-Party-Defendant.
Port Imperial Property Owners Association, Inc., Plaintiff,
v.
Hovnanian Enterprises, Inc., Defendant/Third-Party Plaintiff, and
K. Hovnanian Port Imperial Urban Renewal, Inc., Defendant/Third-Party Plaintiff-Appellant,
v.
Paulus, Sokolowski and Sartor, Inc., Port Imperial Condominium Association, Inc., Densification, Inc., Addablock Limited, Inc., Breese Corporation, and Albert Marine Construction, Inc., Third-Party Defendants, and
New Jersey Drilling, U.S. Wick Drain, Inc., and Drainage & Ground Improvement, Third-Party Defendants-Respondents.
No. A-1013-10T1.
Superior Court of New Jersey, Appellate Division.
Submitted March 29, 2011.
Decided May 2, 2011.
*286 Golden, Rothschild, Spagnola, Lundell, Boylan & Garubo, P.C., attorneys for appellant K. Hovnanian Port Imperial Urban Renewal, Inc. (Christopher H. Westrick, Bridgewater, of counsel; Kurt J. Trinter and Mr. Westrick, on the briefs).
Berman Sauter Record & Jardim, P.C., attorneys for appellant Port Imperial Condominium Association, Inc. (Matthew E. Meyers and Steven R. Rowland, Cedar Knolls, on the briefs).
Law Offices of William E. Staehle, attorneys for respondent U.S. Wick Drain, Inc. (Stephen C. Cahir, on the brief).
Gartner & Bloom, P.C., attorneys for respondent New Jersey Drilling (Marc Shortino, on the brief).
Leary, Bride, Tinker & Moran, P.C., attorneys for respondent Drainage & Ground Improvement (Mark Bongiovanni, Cedar Knolls, of counsel; Christina E. Sirico, on the brief).
Before Judges PARRILLO, SKILLMAN and ROE.
The opinion of the court was delivered by
PARRILLO, P.J.A.D.
We granted leave to appeal to determine whether N.J.S.A. 2A:14-1.1's statute of repose operates to preclude construction defect claims against various subcontractors who completed work on the construction project more than ten years before the filing of complaints against them. For the following reasons, we affirm the Law Division's grant of summary judgment in their favor.
This defective construction litigation involves the 445-unit residential condominium community of Port Imperial along the banks of the Hudson River in Guttenberg and West New York (Port Imperial, project *287 or site) developed by defendant-third party plaintiff K. Hovnanian Port Imperial Urban Renewal, Inc. (K. Hovnanian). Construction spanned several years from 1996 until its completion in 2002. Port Imperial is split into three communities: Jacob's Ferry, Harbor Place and Bull's Ferry. The Avenue at Port Imperial runs the length of Port Imperial along the Hudson River, dividing these communities in half. Those units on the east or Hudson River side of the Avenue are referred to as view units. None of the units in Port Imperial have basements, but rather were constructed on slab foundations.
K. Hovnanian hired Barton & Associates, Inc. (Barton), Paulus, Sokolowski & Sartor, Inc. (PS & S) and Weintraub Organization, Ltd. (Weintraub) to design the project. As a result of unsuitable soil conditions at the site, PS & S designed and implemented a ground improvement plan, which consisted of deep dynamic compaction that included the dropping of a heavy weight from a crane onto loose soil, the drilling of holes in the soil and installation of wick drains to allow for removal of water from the soil, and surcharginga process of piling rock and other debris onto the soil and monitoring the rate of settlement.
In order to implement this plan, K. Hovnanian contracted with defendants U.S. Wick Drain, Inc. (U.S. Wick), Drainage and Ground Improvement, Inc. (DGI), and New Jersey Drilling Co. (N.J. Drilling). Specifically, N.J. Drilling pre-drilled the holes for wick drains at the Bull's Ferry section of the project, which it completed on May 4, 1998. That same month, DGI completed the actual wick drain installation at Bull's Ferry. Meanwhile, U.S. Wick performed both pre-drilling and installation of wick drains at Jacob's Ferry, which it completed, at the latest, in February 1998.
Upon completion of the project, K. Hovnanian transferred maintenance and control of the Port Imperial development to plaintiff Port Imperial Condominium Association (PICA), an entity created for this purpose. During the transition process, PICA hired Falcon Engineering (Falcon) to evaluate the development for any construction defects requiring remedy prior to transition. Falcon uncovered numerous defects, including cracked foundations and problems with certain of the units' roofs and windows, which led PICA, on April 22, 2008, to file a complaint against K. Hovnanian and the design professionals (Burton and PS & S) alleging numerous claims, including negligence, breach of contract, breach of express and implied warranties, and fraud.[1] On July 2, 2008, K. Hovnanian filed an answer to the PICA complaint along with a third-party complaint, naming several subcontractors as third-party defendants, although not U.S. Wick, DGI or N.J. Drilling.
During the ensuing discovery, PICA's geotechnical expert, Pillori Associates (Pillori), produced reports in November 2008 and December 2009 indicating that improper design and implementation of the ground improvement plan was causing settling of the soil under the view units, resulting in damage to the buildings. Specifically, the December 2009 report attributed the settling to defective surcharging and wick drain installation:
We believe that the incomplete wick drain installation beneath the view units at Jacobs Ferry and beneath building 25 at Bulls Ferry has prevented proper *288 drainage of the organic stratum and is directly related to the steady rate of lateral and vertical strains induced by sustained loadings from the fill placement and building construction on the sites. Additional monitoring and further evaluation will be required for an extended period of time to determine if creep induced changes in pore pressure or effective stress will lead to failure of the new bulkhead and/or accelerated lateral movement of the mentioned buildings.
Pillori further commented on the damage to Building 25 at the Bull's Ferry location:
Because of improper wick drain installation, settlement continued at the buildings. . . after the buildings had been constructed, with this settlement damaging the buildings.
. . . .
Since our [November 2008] report was issued, further problems have occurred at Jacobs Ferry and at Building 25 [such as] cracks in the floor slab and other damage has appeared at 9 Lydia Drive in Building 25[, which] can be explained by poor wick drain installation.
As a result, Pillori recommended that the view units at Jacob's Ferry and Bull's Ferry be supported with pile foundations and concluded that demolition and reconstruction was the only practical way to install those foundations.
Pillori identified other problems with front stoops, cracks in masonry, separation between walls and floor slabs, sloping floors and the separation of units from adjacent units. The December 2009 Pillori report opined that "[t]he magnitude of the settling from rotting wood or from soil migration into the disturbed bulkhead could be very significant, largely unpredictable, and would be in addition to the settlement caused by ongoing secondary consolidation of the underlying organic stratum" (emphasis added).
Following production of the first Pillori report, PICA amended its complaint on February 10, 2009 to name additional defendants, including U.S. Wick, DGI and N.J. Drillingthe first time these subcontractors appeared as named parties in the PICA action. The amended complaint alleged that construction defects arising from ground improvement services performed by these newly named defendants resulted in the ongoing settling of certain buildings at Port Imperial.
Thereafter, on March 31, 2010, Port Imperial Property Owners Association (PIPOA), the master association at Port Imperial charged with maintaining and controlling the Avenue at Port Imperial and the Promenade walkway, filed a separate action against PICA, K. Hovnanian and its parent, Hovnanian Enterprises, Inc., for alleged deficiencies in the Promenade walkway and adjacent bulkhead. The walkway runs through the community and, along with the bulkhead that lays underneath the Promenade, is separate from, but adjacent to, PICA's property. The bulkhead is exposed to the Hudson River on one side and extends underneath some of the view units. K. Hovnanian answered PIPOA's complaint and filed a third-party complaint against various design professionals, contractors and sub-contractors, including for the first time, U.S. Wick, DGI and N.J. Drilling. Ultimately, the trial court consolidated the PICA and PIPOA actions.
U.S. Wick and DGI subsequently filed motions for summary judgment, which were followed thereafter by N.J. Drilling's own motion for summary judgment, all based on the statute of repose, N.J.S.A. 2A:14-1.1. Following argument, the trial court granted these motions in favor of defendants U.S. Wick and DGI, dismissing *289 the complaint against those entities as outside the statutory ten-year time bar, applicable to construction conditions both defective and unsafe. The court subsequently denied K. Hovnanian's and PICA's motion for reconsideration and on the same day, granted N.J. Drilling's motion for summary judgment on the identical grounds of the statute of repose.
On appeal, K. Hovnanian and PICA[2] contend that the trial court wrongly applied the statute of repose, made an impermissible finding of fact and rendered a premature decision. We disagree.
The statute of repose, N.J.S.A. 2A:14-1.1, precludes certain actions arising out of the defective and unsafe condition of an improvement to real property. As pertinent, the statute provides:
No action, whether in contract, in tort, or otherwise, to recover damages for any deficiency in the design, planning, surveying, supervision or construction of an improvement to real property, or for any injury to property, real or personal, or for an injury to the person, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained on account of such injury, shall be brought against any person performing or furnishing the design, planning, surveying, supervision of construction or construction of such improvement to real property, more than 10 years after the performance or furnishing of such services and construction.
[N.J.S.A. 2A:14-1.1a (emphasis added).]
Thus, when a plaintiff asserts damages arising from an improvement to real property, the statute of repose may restrict liability of a builder or contractor. Dennis A. Drazin, New Jersey Premises Liability § 23:1 at 521 (2010).
Early common law principles once shielded developers and contractors under the doctrine of caveat emptor. Wendell A. Smith, et al., New Jersey Condominium & Community Association Law § 12:1 at 273 (2010). Over time, however, the courts began to enforce implied warranties against builders, including the implied warranties of habitability and of fitness and merchantability. See generally McDonald v. Mianecki, 79 N.J. 275, 293-95, 398 A.2d 1283 (1979). As a result of this increasing exposure to liability, the Legislature in 1967 enacted the statute of repose. Smith, supra, § 12:1 at 273.
Given the Legislature's intent to "delimit [the] greatly increased exposure" of potential builder or contractor liability, the Court determined that the scope of the statute should be construed broadly to apply to general contractors, planners, designers, landscape gardeners, well drillers and the like. Rosenberg v. Town of N. Bergen, 61 N.J. 190, 194, 198, 201, 293 A.2d 662 (1972). The Court also broadly interpreted any "improvement to real property" to include an alteration, modification or addition that (1) enhances the use of the property; (2) expends labor or money; (3) is more than a mere repair; (4) adds value to the property; and (5) is permanent in nature. Ebert v. S. Jersey Gas Co., 157 N.J. 135, 139, 723 A.2d 599 (1999). Thus, the term incorporates structural improvements, "which are required for the structure to actually function as intended." Brown v. Jersey Cent. Power & Light Co., 163 N.J.Super. 179, 195, 394 A.2d 397 (App.Div.1978), certif. denied, 79 *290 N.J. 489, 401 A.2d 244 (1979). For example, improvements "to prevent continued sinkage" of a house built partially on fill is an "improvement" within the meaning of the statute because "[w]ithout it, the house could not function as intended." Horosz v. Alps Estates, Inc., 136 N.J. 124, 129-31, 642 A.2d 384 (1994).
Unlike a conventional statute of limitations, the statute of repose does not bar a remedy but rather prevents the cause of action from ever arising. Rosenberg, supra, 61 N.J. at 199, 293 A.2d 662. The significant distinction is "[t]he time within which suit may be brought under this statute is entirely unrelated to the accrual of any cause of action." Ibid. Therefore, "injury occurring more than ten years after the negligent act allegedly responsible for the harm, forms no basis for recovery. The injured party literally has no cause of action." Ibid.; see also E. A. Williams, Inc. v. Russo Dev. Corp., 82 N.J. 160, 167, 411 A.2d 697 (1980). Regardless of whether the injury occurs within the ten year statute of repose period, a claim is barred unless the plaintiff's complaint is filed within the statutory period, measured from when the performance or furnishing of construction-related services has been "completed." Richards v. Union Bldg. & Constr. Corp., 130 N.J.Super. 127, 130, 325 A.2d 831 (App.Div.1974).
Generally, the time when the statute of repose commences to run is the date of "substantial completion" of the initial construction. Russo Farms, Inc. v. Vineland Bd. of Educ., 144 N.J. 84, 117, 675 A.2d 1077 (1996); see also Horosz, supra, 136 N.J. at 131-32, 642 A.2d 384. The Court has defined "substantial completion" as the time when an owner can occupy or utilize the building, generally indicated by the issuance of a certificate of occupancy. Hein v. GM Constr. Co., 330 N.J.Super. 282, 284, 749 A.2d 422 (App. Div.2000). However, where
the design or construction services are completed before a certificate of occupancy is issued and the designer or contractor has no further functions to perform in respect of that construction project, then the start date for Statute of Repose purposes is the date on which the designer or contractor has completed his or her portion of the work.
[Daidone v. Buterick Bulkheading, 191 N.J. 557, 560, 924 A.2d 1193 (2007).]
In Daidone, the Court determined that the statute of repose began to run once a contractor, hired to install foundation pilings, completed the task and had no further involvement in the construction project. Id. at 561, 566, 924 A.2d 1193. Thus, unlike a claim against a general contractor whose work continued throughout the project up until the time of occupancy, a claim against a subcontractor who performed limited services with no further involvement with the construction is barred after ten years following the completion of that subcontractor's discrete task. See id. at 568, 924 A.2d 1193.
Although broadly construed by the courts, the Legislature has limited the statute of repose so that only improvements to real property "that result in unsafe and defective conditions implicate the statute[,]" Newark Beth Israel Med. Ctr. v. Gruzen & Partners, 124 N.J. 357, 364, 590 A.2d 1171 (1991), which exists when the "work created a situation hazardous to the well-being and safety of persons or property coming into contact with the improvement or structure." E. A. Williams, supra, 82 N.J. at 171, 411 A.2d 697; see, e.g., Rosenberg, supra, 61 N.J. at 197-98, 293 A.2d 662 (holding that a negligently paved road created an unsafe condition); Cnty. of Hudson v. Terminal *291 Constr. Corp., 154 N.J.Super. 264, 267, 381 A.2d 355 (App.Div.1977) (holding that negligently installed ceramic tiles that began to crumble and fall created a hazardous condition), certif. denied, 75 N.J. 605, 384 A.2d 835 (1978); Salesian Soc'y v. Formigli Corp., 120 N.J.Super. 493, 496, 295 A.2d 19 (Law Div.1972) (holding that the leakage of water that damaged the building's support structure created an unsafe condition), aff'd o.b., 124 N.J.Super. 270, 306 A.2d 466 (App.Div.1973).
Unlike what is necessary and proper to ensure safety, the Court has declined to find an unsafe condition as a result of negligent improvements to real property that create merely expensive and inconvenient repairs. Thus, in E. A. Williams, supra, the Court found that an unsafe condition did not exist as a result of the construction of the plaintiff's building too close to its property line due to a negligent survey. 82 N.J. at 172, 411 A.2d 697. Declining to apply the statute of repose, the Court found that "[t]he surveying error did not create a hazardous or unsafe condition in the building but rather resulted in its functional impairment with consequential economic losses entailed in its correction. The statute does not cover [that] type of defect." Ibid. According to the E.A. Williams Court, such an error "may well cause the owner dismay and economic injury," but will not result in a safety hazard and, thus, is not covered by the statute of repose. Ibid.
In contrast, in Horosz, supra, the Court found that the statute of repose precluded the plaintiff's belated claim because the sinking house's foundation constituted a "defective and unsafe condition," as it resulted in a safety hazard; "was integral to the house as a structure"; and caused consequential economic losses. 136 N.J. at 127, 130-31, 642 A.2d 384. Most pertinent for present purposes, the Court determined that without the appropriate underpinning repairs to prevent continued sinking of the house built on fill, "the house could not function as intended, [which] went beyond `expensive and inconvenient changes based on efficiency to measures necessary and proper to ensure safety.'" Id. at 131, 642 A.2d 384 (quoting E. A. Williams, supra, 82 N.J. at 172, 411 A.2d 697).
Similarly, in Newark Beth Israel, supra, the Court applied the statute of repose after finding a building's functional impairment related directly to an unsafe condition. 124 N.J. at 365, 590 A.2d 1171. There, the defendant negligently designed a five-story structure that could not safely support planned additional stories. Id. at 360, 590 A.2d 1171. Consequently, the design would have rendered the completed building "dangerously susceptible to the wind," creating a hazardous condition. Id. at 361, 590 A.2d 1171. Even though the design flaw did not pose a threat to the building as presently constructed, its intended and eventual expansion, as contemplated by the owner's contract with the architect, would create a danger of collapse, id. at 365-66, 590 A.2d 1171, and that prospect was sufficient to render the structure "unsafe." Id. at 365, 590 A.2d 1171.
The essence of appellants' argument on appeal is that an "unsafe" condition did not exist at Port Imperial.[3] The motion *292 judge soundly rejected this contention, noting that PICA's complaint sufficiently alleged, and the Pillori expert reports provided an adequate basis on which to find, that the work completed by all three defendants rendered the buildings at issue unsafe.
As to the former, the court focused on three counts of PICA's amended complaint, which alleged negligence, strict liability and "willful and wanton disregard for human safety." Specifically, the latter count alleged that defendants, including DGI and U.S. Wick, "negligently construct[ed] and erect[ed] the condominium [and] exhibited willful and wanton disregard for the safety of [PICA] and its members. At all times, the defendants recklessly disregarded the likelihood of the potential serious harm resulting from the negligent construction and erection of the condominium" (emphasis added). Moreover, in count five alleging strict liability, PICA asserted that the units "were defective and deficient, and were unreasonably dangerous to unit owners and to personal property" (emphasis added).
As to the record evidence in support of these allegations, the court referred to the second Pillori report issued in December 2009, to conclude that because of improper wick drain installation, "a settlement continued. . . after the buildings had been constructed," the magnitude of which "could be very significant, largely unpredictable," and remediable only by "first demolish[ing] the existing buildings, then drill[ing] in new foundation piles through the fill and organic deposits, terminating within the underlying glacial soil or bedrock." The motion court thus concluded:
that the record is replete with evidence alleging sufficient evidence that the alleged faulty workmanship of these defendants has participated and led to the creation of this defective and unsafe condition for these subject properties which allows the application of the statute of repose.
We agree.
The summary judgment record supports appellants' claims that without appropriate ground improvements, which Pillori has suggested may require total demolition and rebuilding of certain units, the sinking units could not fulfill their intended function of residential occupation. Indeed, PICA's own expert has opined as to the gravity of the condition. This evidence, as noted, has been proffered to advance complaint allegations that "[t]he units and common elements are not fit for their intended use" (emphasis added). PICA's amended complaint also alleged "the potential serious harm resulting from the negligent construction" of the units, which "were unreasonably dangerous to unit owners and to personal property[,]" and that "defendants exhibited willful and wanton disregard for the safety of [PICA] and its members." Clearly, both the nature of the allegations in the underlying lawsuit and the proof advanced in support thereof qualify defendants for the protection of the statute of repose. And contrary to appellants' argument, it matters not that defendants themselves offered no proof of an unsafe condition so long as evidence appears *293 in the record that defendants caused both "functional impairment, with consequential economic losses, and a hazardous condition" to the affected units at Port Imperial. See Horosz, supra, 136 N.J. at 131, 642 A.2d 384.
With specific regard to defendant N.J. Drilling, appellants additionally claim that the grant of summary judgment was premature because discovery had not ended. We disagree. Simply put, appellants have not demonstrated how further discovery will patently change the outcome. Pressler & Verniero, Current N.J. Court Rules, comment 2.3.3 on R. 4:46-2 (2011) (citing Wellington v. Estate of Wellington, 359 N.J.Super. 484, 496, 820 A.2d 669 (App. Div.), certif. denied, 177 N.J. 493, 828 A.2d 920 (2003)).
Affirmed.
NOTES
[1] PICA actually filed an earlier complaint on November 13, 2006, against the same parties as well as the Boroughs of West New York and Guttenberg, which, by stipulation, was dismissed without prejudice on April 7, 2008.
[2] PIPOA did not seek leave to appeal the trial court's grant of summary judgment to defendants.
[3] We note that neither PICA nor K. Hovnanian opposed DGI's and U.S. Wick's motions for summary judgment on the ground that the alleged defective conditions were unsafe. Rather, they raised this contention for the first time on their motions for reconsideration, claiming that the motion judge made an "impermissible finding of fact" that there existed an unsafe condition at Port Imperial, which DGI and U.S. Wick had failed to demonstrate. Even then, appellants presented no new evidence in support of their claim. In contrast, U.S. Wick's brief in support of its summary judgment motion specifically argued:

[PICA] clearly alleges damages due to defective and unsafe conditions of the various buildings at Jacob's Ferry and elsewhere. As to the damage at Jacob's Ferry, [PICA's] proposed geotechnical expert, Pillori Associates, has given the opinion that the damages to the Jacob's Ferry buildings, specifically buildings 29 to 36 "included cracks in the masonry, cracked footings, separations developing between floor slabs and walls, separations between view units and adjacent units, and floors sloping downward to the east."