260 N.J. Super. 564 (1992)
617 A.2d 288
CHARLES AND ESTHER ROLNICK, PLAINTIFFS-APPELLANTS,
v.
GILSON & SONS, INC., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 17, 1992.
Decided December 10, 1992.
*565 Before Judges PRESSLER, R.S. COHEN and KESTIN.
Mark L. Antin argued the cause for appellants (Gennett, Kallmann, Antin & Robinson, attorneys).
Roseann Primerano argued the cause for respondent (Brian Granstrand, attorney).
The opinion of the court was delivered by PRESSLER, P.J.A.D.
In April 1987 the home of Charles and Esther Rolnick in New City, New York, was severely damaged by a fire allegedly caused by a defective component in an attic ventilator fan sold to them and installed by defendant Gilson & Sons, Inc. in 1974 or 1975. The fan was installed by Gilson as an option when it designed and installed a central air conditioning system in the house. The action was dismissed on limitations grounds, and plaintiffs appeal. We reverse, concluding that the ten-year bar of N.J.S.A. 2A:14-1.1 does not apply to this transaction.
*566 The facts relating to the limitations issue are not in substantial dispute. Preliminarily, we note that although the situs of the transaction was clearly New York, the action was instituted in New Jersey because this is where defendant maintains its business office. In any event, when plaintiffs purchased their home and decided to install central air conditioning, they obtained quotations from various contractors and vendors, including Sears. A friend recommended Gilson, whose New Jersey telephone number appeared in the Rockland County telephone directory. Plaintiffs ultimately accepted Gilson's proposal.
According to the deposition of Ronald Gilson, one of defendant's principals, the attic ventilator fan was not an integral component of the air conditioning system. The witness stated that the installation of a roof-mounted ventilator is not typically required as an adjunct to the installation of a residential central air conditioning system. When asked to elucidate the "circumstances as to when such a ventilator ... is installed," the witness explained that "[n]ormally we offer an attic ventilator fan as an option to a base contract price along with other options. At that point, it's up to the consumer to decide if they want that option or not." Plaintiffs apparently did.
The manufacturer of the attic fan was not identified. Gilson had no independent recollection and no longer had pertinent records. The damage to the fan caused by the fire precluded identification by visual inspection. There was, however, no question that the fan was a mass produced, brand-name item. Plaintiffs' expert, who attributed the defect to a faulty thermal overload device incorporated into the fan, opined from his examination that the fan appeared identical to a product manufactured and marketed by Nautilus.
Following the completion of discovery, defendant moved for summary judgment on the ground that plaintiffs' action was barred by N.J.S.A. 2A:14-1.1. Although the trial court initially denied the motion, it later reversed itself on a motion for reconsideration, concluding that it was constrained to do so by *567 the principles enunciated in Brown v. Jersey Central Power & Light Co., 163 N.J. Super. 179, 394 A.2d 397 (App.Div. 1978). We are, however, satisfied that the court read Brown too broadly.
N.J.S.A. 2A:14-1.1, enacted in 1967 and entitled "10 years; damages for injury from unsafe condition of improvement to real property," prescribes a ten-year statute of limitations for claims arising out of "the design, planning, supervision or construction of an improvement to real property...." Although, as the Supreme Court pointed out in Rosenberg v. Town of North Bergen, 61 N.J. 190, 194, 293 A.2d 662 (1972), the "available materials touching its legislative history are meager and unrevealing," it appears that New Jersey's adoption of the statute was part of a nationwide campaign by architects and builders to limit their liability and that by 1969, "some thirty states adopted identical or similar statutes." Ibid. The Supreme Court further assumed that the impetus for limitation of liability was to be found in two legal developments in which New Jersey was in the forefront, the adoption of the discovery rule, which results in deferral of the accrual date of the cause of action, and rejection of the rule that an architect's and contractor's liability terminates upon completion of the work and its acceptance by the owner. Id. at 195-197, 293 A.2d 662.
Because there is very little legislative history beyond the non-binding title of the enactment, there has been some uncertainty over the intended scope of the limitations provision, and more particularly over the key phrase "improvement to real property." We are aware that the substantive content of this phrase may to some degree depend on the nature of the controversy in which its meaning must be tested. Without surveying the whole of the body of the law of fixtures in the various contexts in which that law may be relevant, we are at least satisfied, in the context of this statute and in the light of its apparent purposes, that the sale of and installation in a residence of a mass produced, mass marketed appliance does not constitute *568 the "design, planning, supervision or construction of an improvement to real property." While we recognize that a different conclusion might obtain if the appliance were an integral component of a basic system designed and installed by the contractor, that is, the heating, plumbing, electrical or air conditioning systems, we are confident that a single appliance, standing on its own, as it were, is not an improvement within the intendment of this statute. Thus, as we explained in Brown, the statute was not intended to apply to:
manufacturers and purveyors of products which are used in the factory, shop or home, or those who service these products. As best we can perceive, the intent of the language of the statute was to protect those who contribute to the design, planning, supervision or construction of a structural improvement to real property and those systems, ordinarily mechanical systems, such as heating, electrical, plumbing and air conditioning, which are integrally a normal part of that kind of improvement, and which are required for the structure to actually function as intended. [163 N.J. Super. at 195, 394 A.2d 397]
In sum, in respect of such a transaction as here, we regard the supplier as the vendor of a product, and we are persuaded that in respect of that component of the transaction, his status is not converted to that of a protected contractor merely because he wires the appliance instead of plugging it in, or because he creates an aperture into which the appliance is to fit, or because he in some other way "installs" it.
We are satisfied that the case law in this jurisdiction is not to the contrary. Thus in Ilich v. John E. Smith Sons Co., Inc., 145 N.J. Super. 415, 367 A.2d 1216 (Law Div. 1976), cited with approval in Brown, the installation of a meat grinding machine in a butcher shop, despite the fact that the installation required wiring, was held to be beyond this statute. And in those cases in which the statute was held to apply, the defect was in an integral structural component of a basic system, not in a mass-produced, mass-marketed appliance unessential to the functioning of such a system. See, e.g., Brown, supra, (a transfer switch assembly cabinet for a missile control center); Wayne Tp. Bd. of Ed. v. Strand Century, Inc., 172 N.J. Super. 296, 300, 411 A.2d 1161 (a three to four ton dimmer panel found to constitute "an integral part of the permanent electrical system *569 on the auditorium"). And compare Santos v. Hubey Corp., 236 N.J. Super. 608, 566 A.2d 588 (Law Div. 1989) with Hall v. Luby Corp., 232 N.J. Super. 337, 556 A.2d 1317 (Law Div. 1989) (elevators in commercial buildings). As we view the undisputed facts in this case, the culprit attic fan was no different in effect from a dishwasher or a clothes dryer or any other home appliance unessential to structural or system function. The sale and installation of such an appliance is not protected by the ten-year limitations period of the statute.
Because we are satisfied that this action is not precluded by N.J.S.A. 2A:14-1.1, we need not address the choice of law issue plaintiffs alternatively rely on. They claim that because the substantive law governing the transaction is that of New York, it is New York's limitations law which should apply, not New Jersey's, and New York has no counterpart to our ten-year limitations period. We note first that defendant argues that New Jersey limitations law should govern even if New York substantive law governs. We also note that the issue was raised late in these proceedings and may therefore be deemed to have been waived by plaintiffs.
Finally, we are satisfied that the choice of law issue is not free from doubt. While we recognize that our Supreme Court in Heavner v. Uniroyal, Inc., 63 N.J. 130, 305 A.2d 412 (1973), criticized the majority rule that the law of the forum governs limitations issues and that while it opted not to apply that rule mechanically, nevertheless the exception thereto which it there carved out was limited. The Heavner court did not abandon the majority rule in its entirety but held only that where the foreign jurisdiction whose substantive law governs the controversy prescribes a shorter limitations period than the forum jurisdiction, it is that shorter period that applies. We recognize, moreover, that different policy considerations come into play when the forum's limitations law allows a longer period than when it allows a shorter period. And we also recognize that the cases applying the Heavner rule have all done so in the context of a more expansive limitations period here than in the *570 foreign jurisdiction whose substantive law, on a governmental interest analysis, was held to control. See, e.g., Seckular v. Celotex, 209 N.J. Super. 242, 507 A.2d 290 (App.Div. 1986); Seals v. Langston Co., 206 N.J. Super. 408, 502 A.2d 1185 (App.Div.), certif. denied, 104 N.J. 386, 517 A.2d 392 (1986); Deemer v. Silk City Textile Mach. Co., 193 N.J. Super. 643, 475 A.2d 648 (App.Div. 1984); Axelrod v. CBS Publications, 185 N.J. Super. 359, 448 A.2d 1023 (App.Div. 1982). In any event, we need not decide the question now, and we decline to do so.
The summary judgment dismissing the complaint is reversed, and we remand for further proceedings.