269 N.J. Super. 71 (1993)
634 A.2d 568
EVAN LEWIS, PLAINTIFF,
v.
HOPEWELL VALLEY RACQUET CLUB, ET AL., DEFENDANT. EVAN LEWIS, PLAINTIFF,
v.
ARROW MASTER CORPORATION, DEFENDANT-RESPONDENT. TENCOR, INC. (INCORRECTLY NAMED AS HOPEWELL VALLEY RACQUET CLUB), THIRD PARTY PLAINTIFF-APPELLANT,
v.
DURAFLEX, INC. AND PRINCETON POOL & PATIO, THIRD PARTY DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued October 27, 1993.
Decided December 10, 1993.
*72 Before Judges KING, A.M. STEIN and A.A. RODRIGUEZ.
Steven Polansky argued the cause for appellant Tencor, Inc. (Spector, Gadon & Rosen, attorneys; Mr. Polansky, on the brief).
Michael K. Tuzzio argued the cause for respondent Arrow Master (Donington, Karcher, Leroe, Salmond, Luongo & Ronan, attorneys; Susan S. Rankin, on the brief).
The opinion of the court was delivered by KING, P.J.A.D.
This case presents the question whether a swimming pool, installed with diving stands and boards, is an "improvement to real property" within the meaning of our ten-year statute of repose, N.J.S.A. 2A:14-1.1.[1] The statute protects "person[s] performing *73 or furnishing the design, planning, supervision of construction or construction of such improvement to real property, ..." Id. We conclude that the designer and installer of this in-ground pool and accessories, Arrow Master Corporation, is entitled to the benefit of the statute of repose and affirm the summary judgment in its favor.

I
Plaintiff Evan Lewis was injured in a diving accident on June 24, 1988 at the Hopewell Valley Swim Club. Plaintiff sued various defendants on June 14, 1989, including the appellant, Tencor, Inc., the owner of the swim club. Plaintiff amended his complaint on June 22, 1990 to sue respondent, Arrow Master, which built and installed the pool and diving stands. Arrow Master also installed the original diving boards, but not the replacement board involved in this accident.
Tencor settled with plaintiff for $115,000. The other defendants also apparently settled with plaintiff or obtained dismissals. Tencor alone pursued a cross-claim for contribution against the non-settling defendant Arrow Master, under the Joint-Tortfeasors Contribution Law, N.J.S.A. 2A:53A-1 to -5, based on a consent judgment against Tencor in favor of plaintiff. Arrow Master moved successfully for summary judgment on the cross-claim raising the ten-year bar of N.J.S.A. 2A:14-1.1.
The 35' by 83' in-ground pool was designed and built in 1978, more than ten years before plaintiff's initial complaint was filed in June 1989. Arrow Master constructed and installed the pool with the two diving stands. Arrow Master hired an architectural firm, Fountainhead Associates, to design the pool. Arrow Master claims that the pool was constructed in accordance with the *74 requirements of Hopewell Township and the standards set by the National Swimming Institute. Pursuant to the construction contract, Arrow Master also supplied the original diving board for the one-meter diving stand that plaintiff was using at the time of the accident. This original diving board was replaced before the accident by the more flexible diving board actually in use when plaintiff was hurt. Arrow Master had nothing to do with the replacement board. Arrow Master supplied the diving stands which were bolted down to the pool deck during construction, as part of the contract for construction of the pool. The two diving stands and the original boards were described in the pool construction contract under "accessory equipment." In 1978, upon completion of construction of the pool, the pool house, a "kiddy" pool, the cabana, and a kitchen, the Hopewell Township assessor increased Tencor's tax assessment for improvement to real estate by $56,900 for taxable year 1979.
The negligence theories against the defendant Arrow Master relevant to design and construction are contained in plaintiff's expert's report, part of the record on this appeal. In the expert's report, plaintiff claimed: (1) the diving well area was too shallow by 2-1/2 feet in violation of industry standards, (2) the transition slopes from the shallow to the deep end were "too close, inadequate for adult use of diving well. The transition goes from 5 to 9 feet and does not extend over a sufficient area," and (3) the well "should extend from the plummel [sic] of the board 16.4 feet out and it did not in this case." The expert concluded "with a reasonable degree of scientific probability that the defects identified above in the design and construction... were a substantial contributing cause" of plaintiff's injury. Clearly, the claim asserted against Arrow Master was for negligent design and construction of the pool and the accessory one-meter and one and one-half meter diving stands.
We recently reviewed the background of N.J.S.A. 2A:14-1.1, enacted in 1967, L. 1967, c. 59, § 1, and entitled "10 years; damages for injury from unsafe condition of improvement to real *75 property" in Rolnick v. Gilson & Sons, Inc., 260 N.J. Super. 564, 567, 617 A.2d 288 (App.Div. 1992). We said that "impetus for [this] limitation of liability" was provided by two legal developments in tort law, the adoption of the "discovery" rule and the abolition of the rule that designer and contractor liability terminates upon completion and acceptance of work by the owner. Id.; see Rosenberg v. Town of North Bergen, 61 N.J. 190, 195-97, 293 A.2d 662 (1972). New Jersey is one of about 30 or more states which has adopted these statutes of repose in response to legislative activism by architects, engineers and contractors. Id.
As we observed in Rolnick, "there has been some uncertainty over the intended scope of the limitations provision, and more particularly over the key phrase `improvement to real property.'" 260 N.J. Super. at 567, 617 A.2d 288. In Rolnick, we concluded that the sale and installation in a residence of a brand-name, mass-produced and mass-marketed appliance, an attic ventilator fan provided by the contractor as an option in a central air conditioning unit, constituted the sale of a product and not an improvement to realty. Since the fan was an "extra" and not "an integral component of the air conditioning system," the statute of repose was inapplicable. Id. at 566, 617 A.2d 288. We observed that in the cases where N.J.S.A. 2A:14-1.1 had been applied, the claimed defect was in an integral structural component of a basic mechanical or electrical system which was essential to the function of that system. Id. at 568, 617 A.2d 288. We concluded in Rolnick that the attic fan was more like a dishwasher, clothes dryer, or other home appliance, since it was optional and not essential to the structure or function of a basic mechanical or electrical system. Id. at 569, 617 A.2d 288. In contrast to the result in Rolnick, our courts have applied the statutory time-bar in cases involving a transfer switch assembly cabinet for a missile control center, Brown v. Jersey Central Power and Light, 163 N.J. Super. 179, 394 A.2d 397 (App.Div. 1978), certif. denied, 79 N.J. 489, 401 A.2d 244 (1979); a three-to-four-ton dimmer panel in the permanent electrical system in a school auditorium, Wayne Tp. Bd. of Educ. v. Strand Century Inc., 172 N.J. Super. 296, 411 A.2d 1161 (App. Div. 1980); and, elevators in commercial buildings, Hall v. Luby *76 Corp., 232 N.J. Super. 337, 556 A.2d 1317 (Law Div. 1989), items essential to the function of the structure and its basic systems.
We reject Tencor's contention here that the in-ground swimming pool and diving blocks, which were bolted to the pool deck at the time of construction, were simply products and not "improvements to real property" within the intendment of N.J.S.A. 2A:14-1.1. This statute was enacted to protect persons involved in "the design, planning, supervision or construction of such improvements to real property." Id. The plaintiff's claim here against Arrow Master is clearly a negligent design and construction claim. The pool and the accessories, the diving stands, were built and installed pursuant to the terms of the $49,750 construction contract. The overall improvement of the swim club's property by this project, including the pool and accessories, resulted in an increased real estate tax assessment of $56,900.
We conclude that the pool and diving stands were permanent improvements and fixtures to the property. If Arrow Master were held liable under the common-law for negligence, liability must be based on how it designed and built this substantial, permanent structure, a risk the Legislature, by the statute, intended to cut off after ten years of exposure.
Several other jurisdictions have found that swimming pools, and permanent accessories like diving stands, are improvements to realty within the contemplation of similar statutes of repose. In Fleck v. KDI Sylvan Pools, Inc., 981 F.2d 107 (3d Cir.1992), cert. denied, ___ U.S. ___, 113 S.Ct. 1645, 123 L.Ed.2d 267 (1993), plaintiff was injured when he dove into an above-ground swimming pool. The court concluded that the homeowners had intended to annex the pool to their real estate and the pool had increased the value of their property. The pool had been in place for 20 years, never had been moved or disassembled, had an elaborate three-tiered deck which completely obstructed the view of the pool's sidewalls, and was "a large, stationary object on the land, measuring 15 by 30 feet ... and holding thousands of gallons of water." Id. at 115. Other examples applying the time-bar to pools as *77 improvements to realty include Mattingly v. Anthony Industries, Inc., 109 Cal. App.3d 506, 167 Cal. Rptr. 292 (Ct.App. 1980); Kline v. Doughboy Recreational Mfg. Co., 495 N.W.2d 435 (Minn.App. 1993) (2-1 decision; involved elaborate above-ground pool); McCulloch v. Fox & Jacobs, Inc., 696 S.W.2d 918 (Tex.Civ.App. 1985) (9-2 decision; "mostly above ground" community pool); South Dearborn School Bldg. Corp. v. Duerstock, 612 N.E.2d 203 (Ind. App. 1993); Noll v. Paddock Pool Builders, Inc., 416 Pa.Super. 284, 611 A.2d 219 (1992), appeal granted sub nom. Noll by Noll v. Harrisburg Area YMCA, 626 A.2d 1158 (Pa. 1993); Luxurious Swimming Pools, Inc. v. Tepe, 177 Ind. App. 384, 379 N.E.2d 992 (1978); Morse v. City of Toppenish, 46 Wash. App. 60, 729 P.2d 638 (1986) (pool was an improvement to realty but diving board was not).
We agree with Judge Kelly's conclusion in his oral opinion that the design and installation of the pool and the two diving stands were not "in the nature of manufacture and sale of a product." He properly found from this record that "the swimming pool in this case was specifically designed for the [swim] Club." He correctly observed that: "it was not a stock model already built which was moved to location," but that Arrow Master "participated in the designing, planning and construction of same," and that, although Arrow Master did not actually design the diving stands, it did provide and install them as part of the overall pool construction contract which it had undertaken.
The summary judgment in favor of Arrow Master is affirmed.
NOTES
[1] The complete statute reads:

No action whether in contract, in tort, or otherwise to recover damages for any deficiency in the design, planning, supervision or construction of an improvement to real property, or for an injury to property, real or personal, or for an injury to the person, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained on account of such injury, shall be brought against any person performing or furnishing the design, planning, supervision of construction or construction of such improvement to real property, more than 10 years after the performance or furnishing of such services and construction. This limitation shall not apply to any person in actual possession and control as owner, tenant, or otherwise, of the improvement at the time the defective and unsafe condition of such improvement constitutes the proximate cause of the injury or damage for which the action is brought. [N.J.S.A. 2A:14-1.1.]