824 A.2d 241

JANUSZ DZIEWIECKI, PLAINTIFF–APPELLANT, v. WIESLAW BAKULA AND ELIZABETH BAKULA, DEFENDANTS, GRO-BELS, INC. AND FOX POOLS, INC., DEFENDANTS–RESPON-DENTS.

Superior Court of New Jersey
Appellate Division

Argued November 12, 2002—Decided June 5, 2003.

Before Judges HAVEY, A.A. RODRÍGUEZ and PAYNE.

*Bernard P. Hvozdovic, Jr.*, argued the cause for appellant (*Lynch & Martin*, attorneys; *James D. Martin*, of counsel; *Mr. Hvozdovic*, on the brief).

*Bernard A. Campbell, Jr.* argued the cause for respondent Grobels, Inc. (*Destribats, Campbell, DeSantis & Magee*, attorneys; *Mr. Campbell*, on the brief).

*Gerard W. Quinn* argued the cause for respondent Fox Pools, Inc. (*Cooper, Perskie, April, Niedelman, Wagenheim & Levenson*, attorneys; *Mr. Quinn*, on the brief).

The opinion of the court was delivered by

RODRÍGUEZ, A. A., J.A.D.

Plaintiff, Janusz Dziewiecki, was seriously injured in a swimming pool diving accident. He sued his hosts, Wieslaw and Elizabeth Bakula, the pool's installer and distributor, Grobels, Inc. (Grobels), and the pool's manufacturer, Fox Pools, Inc. (Fox). Plaintiff asserted a negligence cause of action against the Bakulas. He also asserted products liability and breach of warranty causes of action against Grobels and Fox. The Law Division granted summary judgment to Grobels and Fox pursuant to the ten-year bar set by the New Jersey Statute of Repose (SOR), *N.J.S.A.* 2A:14–1.1, and dismissed all extant claims.[1]

---

[1] The Bakulas and plaintiff had reached a settlement.

The SOR provides that a cause of action "in contract, in tort, or otherwise" for damages resulting from the faulty construction of an improvement to real property, must be commenced within ten years of the construction of such improvement. *N.J.S.A.* 2A:14–1.1. The issue presented in this appeal is whether the SOR precludes the claims against Grobels and Fox. We reverse, concluding that the bar set by the SOR does not apply to the product liability claims against the manufacturer and distributor of a product that is used in or incorporated into an improvement to real estate.

The following undisputed facts were presented to the motion judge. On September 1, 1997, plaintiff, who was thirty-six years old, attended a Labor Day weekend gathering at the home of his friends the Bakulas, in Lawrenceville. Plaintiff had visited the Bakulas' home before, but this was the first time he ever entered the in-ground swimming pool in their backyard. He arrived at approximately 5:30 p.m. and sat on the outside patio talking for a couple of hours. Around 7:30 p.m., he went inside the house to change into his swimming trunks. Plaintiff returned through the patio doors and ran towards the easterly side of the pool. He dove into the pool from ground level, not from the diving board, towards what he believed to be deeper water. Plaintiff had observed other guests that day diving towards that same spot, albeit they were diving from the westerly side. He had to look for a safe place to dive because there were other swimmers in the pool and the water was murky.

Unfortunately, plaintiff hit the angled sides at the western end of the pool. As a result, he suffered severe injuries to his spinal cord. Specifically, a C–5 compression fracture, C–6 burst fracture, and C–5—C–7 cord contusion. He is now a quadriplegic with minimal movement of his legs and hands.

The pre-trial discovery process yielded the following information. The pool had been installed in 1972 by the Bakulas' predecessor in title, Walter Rusecky. Rusecky had purchased the pool from Grobels, an authorized franchise dealer for Fox, the manu-

facturer of the pool. The pool was purchased in a kit and transported by Grobels' pick-up truck from York, Pennsylvania. The kit contained galvanized steel walls, a vinyl liner, "x-braces for behind the steel walls" and "coping packaging." [2] Grobels excavated an appropriate hole, installed the pool, and poured a concrete apron around it. A fence was also built around the pool by Grobels. The pool and installation cost Rusecky $4,000 to $5,000.

According to Robert Seitz, the President of Fox Pool Corporation (the successor corporation to Fox), the Bakulas' pool is similar to the specifications of Fox Pool model F2–113. The pool is approximately sixteen-feet wide and thirty-two feet long. The shallow end of the pool is three-feet deep. The deep end has three sides that slope down at a forty-five degree angle creating the greatest depth (eight feet) at the center of that end. The deep end also has a diving board. Thus, a person diving from the diving board would break the surface of the water at a point directly above the deepest part of the pool. However, a person diving from any of the three sides is likely to break the surface of the water at a point above the sloping sides of the pool. Depending on the exact point of entry, the depth of the water can vary from very shallow to the deepest point.

Plaintiff retained Kenneth R. Laughery, of the Psychology Department at Rice University, as an expert on "the human factors and warnings issues" of this case. According to Laughery's report, the pool has three warning signs. The first sign is located on the fence on the west side of the pool near the gate. It contains the word "DANGER" and a series of pictorials and text. This sign addresses various pool safety rules and instructions for diving off the diving board. There are two additional signs on the coping or upper part of the side of the pool. According to Laughery,

---

[2] In architecture a "coping" is defined as "[t]he highest or covering course of a wall, often with a sloping top to carry off water." *Webster's New International Dictionary*, 587 (2d ed.1947).

These signs contained the signal word "DANGER," the text "NO DIVING, SHALLOW WATER, Diving may cause death or permanent injury," and a negation pictorial showing a human figure hitting his/her head on the bottom of the pool. One of these signs was located on the west side of the pool near the ladder. It is unclear where the second coping sign was located; ... it was either on the west side also near the ladder or on the north side near the patio. There were no depth markers on the side surfaces of the pool. There was no rope or other physical indicator delineating the shallow area of the pool from the deep area.

Laughery opined that, when a swimming pool's water is murky and disturbed by other swimmers, it is virtually impossible to visually assess the depth of the pool. He rendered the following opinions:

3. Given that the pool was designed for diving as clearly indicated by the presence of a diving board, and given that diving is hazardous in the shallow end of the pool, it is imperative that the deep and shallow areas of the pool be identified. Depth markers and accessories such as ropes are standard procedures for such delineation. Neither of these measures was employed for this pool.

. . . .

5. While the content of the two no-diving signs on the coping of the pool was adequate, their location was not. It was possible for someone to approach and dive into a shallow area of the pool without encountering the signs, as occurred with [plaintiff]. Given that this was a diving pool with a hazardous shallow area and that the shallow and deep areas were not delineated, it was imperative that the location as well as the content of the warning signs be adequate.

Fox and Grobels moved for summary judgment raising the SOR as a time bar to the litigation. The judge found that the Bakulas' pool was an improvement to real property. Based on this finding, the judge dismissed plaintiff's claims against Grobels and Fox pursuant to the SOR.

Plaintiff appeals contending that as a matter of law, the SOR does not apply to this case because the Bakulas' swimming pool is not an "improvement to real property," but a product. Thus, product liability principles apply and the action would not be barred. In the alternative, plaintiff contends that, even if the SOR bars a claim against Grobels, Fox is not entitled to the statute's protection.

We begin our analysis with a review of the statute and pertinent case law. The SOR reads in pertinent part as follows:

**10 years; damages for injury from unsafe condition of improvement to real property**

a. No action whether in contract, in tort, or otherwise to recover damages for any deficiency in the design, planning, supervision or construction of an improvement to real property, or for any injury to property, real or personal or for an injury to the person, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained on account of such injury, shall be brought against any person performing or furnishing the design, planning, supervision of construction or construction of such improvement to real property, more than 10 years after the performance or furnishing of such services and construction. This limitation shall serve as a bar to all such actions both governmental and private but shall not apply to actions against any person in actual possession and control as owner, tenant, or otherwise, of the improvement at the time the defective and unsafe condition of such improvement constitutes the proximate cause of the injury or damage for which the action is brought.

[*N.J.S.A.* 2A:14–1.1].[3]

Case law indicates that the main "purpose of the SOR is to limit the expanding liability of contractors, builders, planners, and designers...." *Horosz v. Alps Estates, Inc.,* 136 *N.J.* 124, 128, 642 *A.*2d 384 (1994); *see also Hein v. GM Constr. Co.,* 330 *N.J.Super.* 282, 286, 749 *A.*2d 422 (App.Div.2000) (discussing the difference in purpose between the SOR and statutes of limitations).

▆▆▆▆ Unlike a statute of limitations, the SOR "does not 'bar' a remedy 'in the sense of providing an injured person a certain time to institute suit after the accrual of a cause of action.'" *Hein, supra,* 330 *N.J.Super.* at 286, 749 *A.*2d 422 (quoting *E.A. Williams, Inc. v. Russo Dev. Corp.,* 82 *N.J.* 160, 167, 411 *A.*2d 697 (1980)). Instead, the SOR "'prevents what might otherwise be a cause of action from ever arising. Injury occurring more than ten years after the performance of the negligent act simply forms no basis for recovery.'" *Ibid.* (quoting *E.A. Williams, Inc., supra,* 82 *N.J.* at 167, 411 *A.*2d 697); *see also Cyktor v. Aspen Manor Condo. Ass'n,* 359 *N.J.Super.* 459, 470, 820 *A.*2d 129 (App.Div. 2003) (holding that "the substantive right created by the [SOR] is

---

[3] In 2001, the Legislature amended *N.J.S.A.* 2A:14–1.1 by adding "surveying" to the list of activities covered by the statute.

the right not to have to defend ancient claims or obligations"). The Supreme Court has held that the SOR is to be construed broadly. *Horosz, supra,* 136 *N.J.* at 129, 642 *A.*2d 384.

Here, the parties frame the issue as whether the Bakulas' pool is an improvement to real property. If so, Fox and Grobels argue that plaintiff's suit against them is precluded because the improvement was made more than ten years before the filing of the suit. On the other hand, plaintiff argues that, if the pool is not an improvement to real property, then it is a product and the suit may proceed. Framing the issue in this manner is not helpful because it is based on two inaccurate assumptions. First, that a part or component used in an improvement to real property loses its character as a product. Second, that the SOR applies to *any* activity that is connected to an improvement to real property. We conclude that products liability principles apply to the manufacturer and/or seller of a defective product, even when the product is used to improve real property. We also conclude that the SOR applies only to the party constructing or erecting an improvement to real property and only with respect to work on the improvement itself.

At the outset, we note that the in-ground swimming pool as installed on the Bakulas' property with a cement apron around it, is clearly an improvement to real property. However, the swimming pool kit manufactured by Fox and installed by Grobels is a product, a component of the improvement to real estate. That distinction is the key to the resolution of the issue on this appeal.

In *Rolnick v. Gilson & Sons, Inc.,* 260 *N.J.Super.* 564, 617 *A.*2d 288 (App.Div.1992), we held that a seller and/or installer of a mass-produced product, which is incorporated into an improvement to real property, is not converted into a protected contractor pursuant to the SOR. *Id.* at 567–68, 617 *A.*2d 288. That is so because the *product by itself* is not an improvement within the meaning of the statute. *Id.* at 568, 617 *A.*2d 288. Thus, a seller or installer of the *product,* is not engaged in the statutorily protected activity of " 'design, planning, supervision or construc-

tion of *an improvement to real property.*' " *Id.* at 567–68, 617 A.2d 288 (quoting *N.J.S.A.* 2A:14–1.1 (emphasis added)).

In *Wayne Township Bd. of Educ. v. Strand Century, Inc.,* 172 *N.J.Super.* 296, 411 *A.*2d 1161 (App.Div.1980), we dealt with the question of whether the manufacturer of a dimmer panel in an auditorium was protected by the SOR. We observed that the SOR "was not intended to benefit manufacturers and sellers of products who were uninvolved in the design, planning and construction of the improvements to real estate." *Id.* at 302, 411 *A.*2d 1161. "Product design is not enough to trigger" the statute. *Ibid.* The manufacturer must be involved in the designing or construction of the improvement to real estate in order to be protected by the SOR. *Id.* at 303, 411 *A.*2d 1161; *cf. Ball v. Harnischfeger Corp.,* 877 *P.*2d 45, 50 (Okla.1994) (holding that the SOR "was not intended to cover products which are pre-fabricated in mass quantities and sold for the construction of the improvement"). A similar out-of-state authority is *Ferricks v. Ryan Homes, Inc.,* 396 *Pa.Super.* 132, 578 *A.*2d 441 (1990), in which a homeowner brought suit for personal injuries resulting from formaldehyde vapors. The vapors came from the plywood used to construct the home. *Id.* at 442. The court held that the manufacturer was not protected by Pennsylvania's version of the SOR because the manufacturer did not construct or design an improvement. *Id.* at 445. The court concluded that the manufacturer merely furnished a construction material, plywood. This material was a component part of the improvement, but was not made to meet any particular specifications or criteria unique to the house. *Id.* at 443–45. Instead, the plywood was mass-produced and introduced into the market place, each product being practically identical. *Ibid.*

The New Jersey Products Liability Act, *N.J.S.A.* 2A:58C–1 to –11(PLA), provides that if a product is not reasonably fit for its intended purpose due to a manufacturing defect, a design defect or the failure to contain adequate warnings, the manufacturer or seller of such product is liable for the harm caused. *N.J.S.A.* 2A:58C–2. Thus, if the pool kit sold by Fox and Grobels is a

defective product, plaintiff is entitled to sue for his damages. His lawsuit on that cause of action is not barred by the SOR because we find nothing in the language, history or intent of the SOR that insulates the manufacturer and/or seller of a product from liability when such product is used in or incorporated into an improvement to real property. To the contrary, it appears that the intended beneficiaries of the SOR are a different category of professionals, not manufacturers and sellers. As we pointed out in *Rolnick*, "it appears that New Jersey's adoption of the [SOR] was part of a nationwide campaign by architects and builders to limit their liability." Likewise, in *Brown v. Jersey Cent. Power and Light Co.*, 163 *N.J.Super.* 179, 394 *A.*2d 397 (App.Div.1978), *certif. denied*, 79 *N.J.* 489, 401 *A.*2d 244 (1979), we observed:

> As best as we can perceive, the intent of the language of the statute was to protect those who contribute to the design, planning, supervision or construction of a structural improvement to real estate and those systems, ordinarily mechanical systems, such as heating, electrical, plumbing and air conditioning, which are integrally a normal part of that kind of improvement, and which are required for the structure to actually function as intended.

[*Id.* at 195, 394 *A.*2d 397.]

Here, viewing the allegations by plaintiff in the light most favorable to him, we conclude that summary judgment in favor of Fox, the manufacturer and designer of the pool kit, was not appropriate. Plaintiff must still be put to his proofs, but he has submitted sufficient evidence to proceed on a products liability action premised on a failure to provide adequate warnings. The same analysis applies to Grobels *qua* seller or distributor of the pool kit. At the very least, plaintiff is entitled to continue discovery in order to ascertain whether Fox or Grobels was responsible for the placement of the warnings on the Bakulas' pool. If the jury determines that the warnings were inadequate or insufficient, then Fox and Grobels would be strictly liable for selling a defective product. *N.J.S.A.* 2A:58c–2; *see Dewey v. R.J. Reynolds Tobacco Co.*, 121 *N.J.* 69, 94–95, 577 *A.*2d 1239 (1990) (noting that the PLA left intact the "three theories under which a manufacturer or seller may be held strictly liable for harm caused

by a product—defective manufacture, defective design, and defective warnings").

On the other hand, Grobels, *qua* installer is protected by the SOR. Any claims based on the installation or construction of the improvement to real property, *i.e.*, the installed pool, are precluded. Thus, if Grobels was negligent in the placing of the warning signs provided by Fox, such negligence arises from its conduct as an installer. Because the installation was done more than ten years before plaintiff's injury, no cause of action accrues pursuant to the SOR.

Reversed and remanded to the Law Division, Mercer County for further proceedings.