39 A.3d 918 (2012)
425 N.J. Super. 62
STATE of New Jersey, Plaintiff-Appellant,
v.
PERINI CORPORATION, L. Robert Kimball & Associates, Inc., Perma-Pipe, Inc., Natkin & Company, Jacobs Facilities, Inc., Successor-in-Interest to CRSS Constructors, Inc., Fidelity and Deposit Co. of Maryland, Swiss Reinsurance America Corporation, Successor-in-Interest to North America Reinsurance Corporation, Munich Reinsurance America, Inc., Successor-in-Interest to American Re-Insurance Company, United States Fidelity and Guaranty Company, Defendants-Respondents.
State of New Jersey, Plaintiff-Respondent,
v.
Perini Corporation, L. Robert Kimball & Associates, Inc., Natkin & Company, Jacobs Facilities, Inc., Successor-in-Interest to CRSS Constructors, Inc., Fidelity and Deposit Co. of Maryland, Swiss Reinsurance America Corporation, Successor-in-Interest to North America Reinsurance Corporation, Munich Reinsurance America, Inc., Successor-in-Interest to American Re-Insurance Company, United States Fidelity and Guaranty Company, Defendants-Respondents, and
Perma-Pipe, Inc., Defendant-Appellant.
Docket Nos. A-3268-10T4, A-3269-10T4
Superior Court of New Jersey, Appellate Division.
Argued December 5, 2011.
Decided March 30, 2012.
*920 Wayne J. Martorelli, Deputy Attorney General, argued the cause for appellant (A-3268-10) and respondent (A-3269-10) State of New Jersey (Paula T. Dow, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Mr. Martorelli, on the brief).
Vincent P. Tomkiewicz (Bollinger, Ruberry & Garvey) of the Illinois bar, admitted pro hac vice, argued the cause for respondent (A-3268-10) and appellant (A-3269-10) Perma-Pipe, Inc. (McLaughlin & Cooper, and Mr. Tomkiewicz, attorneys; Mr. Tomkiewicz and William F. Hartigan, Jr., Trenton, of counsel and on the brief; Edward Ruberry (Bollinger, Ruberry & Garvey) of the Illinois bar, admitted pro hac vice, and Salena Becker (Bollinger, Ruberry & Garvey) of the Illinois bar, admitted pro hac vice, on the brief).
Peter J. Smith argued the cause for respondents Perini Corporation, Fidelity and Deposit Co. of Maryland, Swiss Reinsurance America Corporation, Munich Reinsurance America, Inc. and United States Fidelity Guaranty Company (Connell Foley, LLP, attorneys; Mr. Smith, of counsel and on the brief; Thomas J. O'Leary, Roseland, on the brief).
Andrew J. Carlowicz, Jr., New Brunswick, argued the cause for respondent L. Robert Kimball & Associates (Hoagland, Longo, Moran, Dunst & Doukas, LLP, attorneys; Mr. Carlowicz, of counsel and on the brief).
Mark A. Rosen, Morristown, argued the cause for respondent Natkin & Company (McElroy, Deutsch, Mulvaney & Carpenter, LLP, attorneys; Mr. Rosen, of counsel and on the brief).
James T. Malysiak (Jenner & Block LLP) of the Illinois bar, admitted pro hac vice, argued the cause for respondent Jacobs Facilities, Inc. (Margolis Edelstein, and Mr. Malysiak, attorneys; Bruce E. Barrett, Mount Laurel, on the brief).
Before Judges A.A. RODRÍGUEZ, SABATINO and ASHRAFI.
The opinion of the court was delivered by
ASHRAFI, J.A.D.
The State of New Jersey appeals (A-3268-10) from an order for summary judgment dismissing its civil complaint for money damages against four contractors that took part in the building of South Woods State Prison in the mid-1990s. Applying the ten-year statute of repose for construction litigation, N.J.S.A. 2A:14-1.1, the trial court concluded that the State had not filed a timely complaint against the contractors.
One defendant, Perma-Pipe, Inc., appeals (A-3269-10) from denial of its motion for summary judgment pursuant to the same statute of repose. The trial court concluded that the statute did not apply to *921 the State's claims of product defect against Perma-Pipe, the manufacturer of pipes that were used in the construction.
We reverse the grant of summary judgment to the four contractor defendants and affirm the denial of summary judgment to Perma-Pipe.

I.
The centralized underground system that distributes hot water throughout South Woods State Prison began failing in 2000, just a few years after construction of the prison was completed. The State claims that leaks and other defects in the pipes and isolation valves are so serious and widespread that the system must be replaced. A complete failure of the system will require that the prison be shut down and the inmate population relocated. According to the State, the malfunctioning of the system is the result of design deficiencies, construction defects, and product failure.
On April 28, 2008, the State filed suit against five companies that were responsible for the design, construction, and materials in building the prison's hot water system. That date was more than ten years after most of the facilities at South Woods State Prison were put into use and prisoners were housed there, but it was three days short of ten years from the date that the State issued the last of its certificates of substantial completion on the prison construction project.
All five defendants moved for summary judgment, arguing the State's claims were untimely under N.J.S.A. 2A:14-1.1a, which states in relevant part:
No action, whether in contract, in tort, or otherwise, to recover damages for any deficiency in the design, planning, surveying, supervision or construction of an improvement to real property, . . . nor any action for contribution or indemnity for damages sustained on account of such injury, shall be brought against any person performing or furnishing the design, planning, surveying, supervision of construction or construction of such improvement to real property, more than 10 years after the performance or furnishing of such services and construction. . . .
The primary dispute in the State's appeal is the date from which the ten-year period began to run triggering this statute of repose. Defendant contractors claimed, and the trial court agreed, that the relevant trigger date was before April 27, 1998, because the prison was occupied and in use by then. The State claimed that the relevant date was in December 1998, but in any event, no earlier than May 1, 1998, the date that it issued certificates of substantial completion for the final phase of the construction project.
In Perma-Pipe's appeal, the primary issue is whether the statute of repose applies to its role in the project. The State and the other defendants contend Perma-Pipe was a manufacturer of piping materials. Perma-Pipe contends it was a designer of a specialized piping system for the construction project.
In reviewing a grant or denial of summary judgment, we are bound by the same standard under Rule 4:46-2(c) that governs the trial court. Liberty Surplus Ins. Corp. v. Nowell Amoroso, P.A., 189 N.J. 436, 445-46, 916 A.2d 440 (2007). We must "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995). Viewed most favorably to the *922 State, the summary judgment record established the following facts.
In February 1995, the State entered into a $203 million contract with defendant Perini Corporation to design and build the South Woods State Prison on an eighty-four-acre tract in Bridgeton. The contract provided for twenty-six separate buildings together with site work, roadways, parking, and perimeter fencing. In March 1995, the State entered into a separate contract with CRSS Constructors, Inc., the predecessor of defendant Jacobs Facilities, Inc., to oversee and supervise the construction project on behalf of the State.
Perini subcontracted with defendant L. Robert Kimball & Associates to provide architectural and engineering services and support, and with defendant Natkin & Company to provide the heating, ventilation, and air conditioning systems for the project. Natkin's responsibilities included the design and construction of a high temperature hot water system to distribute hot water from centrally-located boilers through underground pipes to the prison's separate buildings.
Natkin entered into a contract with defendant Perma-Pipe to manufacture the steel pipes for the hot water system. Perma-Pipe claims that its duties included designing the layout of the underground piping to contract specifications. Although Perma-Pipe was not responsible for installation, it claims that it provided a certified technician during critical stages of installation and performed stress analysis on the system.
The State's contract with Perini was divided into three phases, each with an independent completion deadline and potential liquidated damages payable to the State if Perini did not meet the deadline. Phase I required that within 730 days Perini complete the site work, roadways, parking, and fencing, and also complete and obtain temporary certificates of occupancy ("TCO") for several buildings, including a 960-bed housing unit and the central plant building that would contain the mechanical systems for the prison. The boilers for the hot water system would be located in the central plant and would be completed under Phase I of the contract. Phase IIA required completion and TCOs within 910 days for parts of the project that included an additional 960-bed housing unit and other buildings. The final phase, Phase II, required completion and certificates of occupancy within 1,095 days for the remaining buildings and scope of work under the contract.
In their motions for summary judgment, defendants submitted documentation showing that, as of May 16, 1997, a TCO had been issued and the central plant building housing the boilers was certified as substantially completed. The State took control of operating and inspecting the hot water system as of June 26, 1997. In August 1997, Perma-Pipe certified to Natkin that it had completed its performance related to the piping for the hot water system.
Between May 16, 1997, and May 1, 1998, the State issued thirty certificates of substantial completion for various parts of the construction project. Each certificate was signed by the project manager for the State and by representatives of Perini, CRSS Constructors, the Department of Corrections, and the State Division of Property Management and Construction. Each certificate stated that a specifically designated part of the project was substantially complete and suitable for occupancy or use by the State. Each certificate identified the contract phase and a particular building or other work to which it applied. Each certificate also contained a check-off as to whether a TCO or a certificate of occupancy had been obtained *923 or whether one was not required for that work.
By April 15, 1998, that is, more than ten years before the State filed its complaint in this lawsuit, the State had issued twenty-eight certificates of substantial completion. Those certificates covered Phases I and IIA of the project in their entirety and parts of Phase II. Only two buildings were not included in certificates of substantial completion pre-dating April 27, 1998, a garage and a minimum security housing unit located outside the main perimeter of the prison tract. The certificates of substantial completion for those two buildings were issued on May 1, 1998. None of the thirty certificates of substantial completion designated the hot water system as a separate facility or component of the construction project that was substantially completed.
In responses to requests for admission propounded in discovery, the State admitted that the hot water system was in use and prisoners had begun occupying the prison before April 27, 1998. The State also admitted that the central plant and boilers were completed within Phase I of the project, but it denied that the hot water system as a whole was completed within Phase I. It stated that the hot water system "also includes underground insulated pipe extending throughout the site and connecting to the various structures erected under both Phase [I] and Phase [II] of the Prison Project." It claimed that construction of the hot water system "spanned" the entire construction project and, thus, was not substantially completed before completion of Phase II. The State also alleged that deficiencies in the hot water system required further work on the system by the contractors through December 1998.
The trial court found no genuine and material factual dispute that the hot water system was operating and that the prison was housing inmates as of April 27, 1998. On the basis of that finding, the court concluded that the hot water system was substantially completed before April 27, 1998, and that the State was barred from suing contractors more than ten years later for defects in that component of the prison project. The trial court rejected the State's contention that the statute of repose did not begin to run until the entire project was substantially completed. The court granted summary judgment to the contractor defendantsPerini, Jacobs (CRSS Constructors), Kimball, and Natkin. However, the court denied Perma-Pipe's motion for summary judgment on that same ground, holding that the statute of repose did not apply to the State's product liability claims against Perma-Pipe as the manufacturer of the pipes used in the system. Subsequently, the court denied motions filed by the State and Perma-Pipe for reconsideration of its order.
These interlocutory appeals are now before us following the Supreme Court's order that we consider the merits of the issues pertaining to the statute of repose.

II.
The main issues we must consider are: (1) does the ten-year period of the statute of repose, N.J.S.A. 2A:14-1.1a, run from the substantial completion of a phase or component of a construction project or from completion of the entire project; (2) what is the relevance of multiple and successive certificates of substantial completion in determining the date from which the ten-year period runs; and (3) is a manufacturer that designs and supplies material for a construction project in accordance with customized specifications entitled to protection under the statute of repose.[1]

*924 A.
Citing Welch v. Engineers, Inc., 202 N.J.Super. 387, 495 A.2d 160 (App.Div. 1985), the State argues that a bright-line starting date should apply to the statutory period of repose so that construction litigation retains a level of certainty and predictability. Defendants argue that Welch has been effectively overruled by subsequent cases including Russo Farms, Inc. v. Vineland Board of Education, 144 N.J. 84, 116-19, 675 A.2d 1077 (1996), and Daidone v. Buterick Bulkheading, 191 N.J. 557, 566-67, 924 A.2d 1193 (2007). The trial court concluded that the ten-year statutory period runs from substantial completion of a component of a multi-phase construction project, not the completion of the project as a whole.
The facts relevant to the State's appeal are not in dispute. The hot water system was put in use more than ten years before the State filed suit, and most of the prison buildings were completed and occupied by that point. On the other hand, the final certificates of substantial completion and certificates of occupancy were not issued until a few days short of the ten-year period. Also, no certificate of substantial completion was issued specifically for the hot water system that is the focus of this litigation.
N.J.S.A. 2A:14-1.1a bars any claim arising out of an "improvement to real property" from being brought "more than 10 years after the performance or furnishing of such services and construction." We must interpret the quoted phrases in the context of a multi-phase construction project. Because we address interpretation of a statute and the legal consequences that flow from that interpretation, our standard of review is plenary. In re Pet. for Ref. on City of Trenton Ord. 09-02, 201 N.J. 349, 358, 990 A.2d 1109 (2010); Manalapan Realty, L.P. v. Manalapan Twp. Comm., 140 N.J. 366, 378, 658 A.2d 1230 (1995).
In Russo Farms, supra, 144 N.J. at 92-93, 116-17, 675 A.2d 1077, the issue was whether the statutory period ran from the date a school building was occupied and in use or from the date months later when the punch list for corrective work was completed. The Supreme Court held that the statutory period is triggered at the date of "substantial completion," a term of art in the construction industry. Id. at 117, 675 A.2d 1077; see Trinity Church v. Lawson-Bell, 394 N.J.Super. 159, 175, 925 A.2d 720 (App.Div.2007) ("[S]ubstantial completion is a term of art in the construction industry and it has a well-recognized meaning.").
The Court in Russo Farms held that the architect and the general contractor had substantially completed their work at the time the certificate of occupancy was issued, and therefore, the statute of repose was triggered at that time, not when they completed punch list items. Russo Farms, supra, 144 N.J. at 119, 675 A.2d 1077. The Court's reasoning emphasized the legislative goal of avoiding indefinite liability of a contractor for the invariable loose ends of a construction project, such as a punch list of remaining corrective work. Id. at 117-18, 675 A.2d 1077. Cf. Trinity Church, supra, 394 N.J.Super. at 175, 925 A.2d 720 ("`substantial completion' does not mean `substantial compliance' with the contract or an absence of defects.")
*925 In Daidone, supra, 191 N.J. at 559-60, 924 A.2d 1193, the issue was whether the statutory period for claims against an architect and another subcontractor ran from the completion of their discrete tasks or from the general contractor's completion of the entire project. The Court affirmed summary judgment for the architect and subcontractor, holding that the statutory period was triggered when the contracted "task" was completed and not when the certificate of occupancy was issued. Id. at 564, 924 A.2d 1193. Relying on the "clear" language of the statute, id. at 566, 924 A.2d 1193, the Court held:
[I]f a designer's or contractor's services continue up to and including the date the certificate of occupancy is issued. . ., then the start date . . . is the date of the certificate of occupancy. If, however, the . . . services are completed before a certificate of occupancy is issued and the designer or contractor has no further functions to perform in respect of that construction project, then the start date . . . is the date on which the designer or contractor has completed his or her portion of the work.
[Id. at 566, 924 A.2d 1193.]
In Daidone, the Court acknowledged that its holding would create staggered statutory periods for subcontractors, but it believed the property owner could effectively track the various trigger dates and it could protect its rights by including contractual provisions that required the general contractor to be responsible "until the entire job is completed." Id. at 568, 924 A.2d 1193. Cf. Port Imperial Condo. Ass'n, Inc. v. K. Hovnanian Port Imperial Urban Renewal, Inc., 419 N.J.Super. 459, 470, 17 A.3d 283 (App.Div.2011) ("[U]nlike a claim against a general contractor whose work continued throughout the project up until the time of occupancy, a claim against a subcontractor who performed limited services with no further involvement with the construction is barred after ten years following the completion of that subcontractor's discrete task."); Hopkins v. Fox & Lazo Realtors, 242 N.J.Super. 320, 327-28, 576 A.2d 921 (App.Div.1990) (statutory period for architect responsible only for design of the building ran from performance of contracted task, not performance of complete construction project).
In Welch, supra, 202 N.J.Super. at 388-89, 495 A.2d 160, the plaintiff fell and was allegedly injured as a result of defective design of a truck dock area in a commercial development. The question before us was whether the statutory period of repose as to the engineer-general contractor for the development ran from the completion of its design function or from completion of construction by the same contractor. Id. at 388, 495 A.2d 160. We reversed summary judgment in favor of the contractor, concluding that the statutory period ran from the final day the contractor had performed services at the site, not the date when its design tasks were completed. Id. at 397, 495 A.2d 160.
Contrary to defendants' argument, our decision in Welch is not inconsistent with the Supreme Court's understanding of the statute of repose as expressed later in Russo Farms and Daidone. In Welch, we did not hold that the statute of repose runs from final completion of the entire project as to all contractors. 202 N.J.Super. at 396, 495 A.2d 160. Instead, we held that the work of an individual contractor is not split into components and tasks, each with its own ten-year period of repose. Ibid.
From these three precedents, we discern the following principles pertinent to applying the statute of repose. First, the trigger date is the date of substantial completion, not completion of every last task of the contractor. Russo Farms, supra, 144 N.J. at 117, 675 A.2d *926 1077. Second, separate trigger dates apply to subcontractors that have substantially completed their work, even if the improvement as a whole is not completed and ready for use and a certificate of occupancy has not been issued. Daidone, supra, 191 N.J. at 566, 924 A.2d 1193. Third, the trigger date for any single contractor runs from completion of that contractor's entire work on the "improvement," not from discrete tasks. Welch, supra, 202 N.J.Super. at 397, 495 A.2d 160; see also Daidone, supra, 191 N.J. at 566, 924 A.2d 1193 ("If . . . the designer or contractor has no further functions to perform in respect of that construction project, then the start date . . . is the date on which the designer or contractor has completed his or her portion of the work." (Emphasis added)).
The three construction cases we have discussed, however, did not involve multi-phase projects such as this one. In fact, the parties have not cited, and our own research has not discovered, a published New Jersey decision that analyzes the application of the statute of repose to a multi-phase construction project similar to the one in these appeals. Although Horosz v. Alps Estates, Inc., 136 N.J. 124, 126-27, 642 A.2d 384 (1994), and Newark Beth Israel Medical Center v. Gruzen & Partners, 124 N.J. 357, 360, 590 A.2d 1171 (1991), involved different phases of construction work at a single site, neither opinion includes analysis of whether the trigger date for the statute of repose runs from completion of an earlier phase when a single construction contract includes multiple phases.
Here, the State and defendant contractors take diametrically opposing positions, both of which we reject. The State contends that only completion of the entire project triggers the ten-year period of repose. Defendants contend that substantial completion of any phase or component of a contractor's work triggers the statute of repose as to that phase or component. Defendants contend that the hot water system was an "improvement to real property" that was substantially completed and in use before April 27, 1998, and that a lawsuit alleging defects as to the hot water system could not be filed more than ten years later.
Thus, the issue of statutory interpretation devolves to the meaning of "improvement to real property" in N.J.S.A. 2A:14-1.1a. Defendants cite cases that found a particular component of a construction project to be an "improvement to real property." See Ebert v. S. Jersey Gas Co., 157 N.J. 135, 140, 723 A.2d 599 (1999) (underground natural gas lines); Diana v. Russo Dev. Corp., 352 N.J.Super. 146, 149, 799 A.2d 689 (App.Div.2002) (permanently attached ladder providing access to roof); Luzadder v. Despatch Oven Co., 651 F.Supp. 239, 243-44 (W.D.Pa.1986) (industrial oven in plant), rev'd in part on other grounds, 834 F.2d 355 (3d Cir.1987), cert. denied sub nom. Honeywell, Inc. v. Luzadder, 485 U.S. 1035, 108 S.Ct. 1595, 99 L.Ed.2d 909 (1988); Gnall v. Ill. Water Treatment Co., 640 F.Supp. 815, 817-18 (M.D.Pa.1986) (water treatment system installed in plant). None of the cited cases, however, involved setting a separate statutory trigger date for the disputed component of the construction project. Rather, the issue in each was whether the component that caused injury or damage was part of an "improvement" covered under the statute. In all the cited cases, there was no dispute as to the trigger date for the statute of repose.
This case presents the converse situation. No one disputes that the hot water system is a component of the prison construction project that comes within the definition of "improvement to real property." *927 The dispute is whether substantial completion of the hot water system, as distinguished from other components of the "improvement," triggered its own beginning date for the running of the statute of repose. We think it did not.
The hot water system was not separately "an improvement to real property" within the meaning of N.J.S.A. 2A:14-1.1a. It was a component of an improvement, similar to the steel framing of a building, its roof, any mechanical or electrical system, or other components of a construction project. The Supreme Court's willingness in Daidone, supra, 191 N.J. at 567, 924 A.2d 1193, to permit staggered trigger dates for subcontractors was anchored to the continuing liability of the general contractor or other contractors that remain on the job working on other components of a project. The Court did not state in Daidone that different trigger dates shall apply to the general contractor or other such contractors for each task within the entire project that is completed by subcontractors.
We have previously rejected separate statute of limitations trigger dates for individual components of a construction project. In Mahony-Troast Construction Co. v. Supermarkets General Corp., 189 N.J.Super. 325, 329, 460 A.2d 149 (App. Div.1983), a case involving a leaky roof, we held that "the statute of limitations on an action for deficiencies in design or construction commence[d] to run upon substantial completion of the structure." We stated further that "[t]he bar of the statute does not commence to run against the owner as component parts or subcontracts are completed." Ibid. Our holding makes good sense as applied against any contractor that continues work on the job.
Any number of components of construction may be substantially completed before the entire structure or project is completed and ready for useincluding the site work, the foundation, the framing, the roof, the rough electrical or plumbing work, the walls, the stairs, the windows and doors, the finished electrical or plumbing work, the painting, the pavement, and the landscaping. Subcontractors whose work on any of these components has been completed and who have no further duties may rely on the running of a statute of repose because their participation in the project will be clearly delineated by the date they finished working. But the statute of repose does not run against the general contractor, the project supervisor, or other contractors who have continuing duties. As to them, applying a separate trigger date to a component of a construction project can result in unending and complex periods of time in determining what claims for injuries or damages are timely brought. For contractors who remain on the job, the statute is triggered when their own work on the project is substantially completed. Daidone, supra, 191 N.J. at 566, 924 A.2d 1193.
Here, all defendants except Perma-Pipe had continuing duties on the construction project after April 27, 1998. Therefore, the statute of repose did not begin to run as to them before that date, unless, as we will discuss in the next section of this opinion, evidence in the record establishes the parties' intent and mutual understanding that a phase or part of the entire project was to be treated as a separate "improvement," thus triggering its own period of repose.

B.
In conformity with unpublished and other non-binding decisions cited in defendants' briefs, we have no difficulty accepting the premise that multiple phases of a construction project that are clearly identified and documented can trigger separate periods of repose, even for the general *928 contractor and other contractors that continue to work on the entire project. For example, a general contractor that builds multiple phases of a condominium development or large commercial project may be able to rely on separate ten-year periods of repose for each phase identified in the construction documents.
On the other hand, we reject application of separate trigger dates of repose for components of a project, whether multi-phase or not, that are not clearly identified in the documentary record as distinguishable "improvements to real property." In the absence of clear designation in the documentary record, with distinct dates of substantial completion, occupancy, and use, separate periods of repose for each component of a construction project would generate unpredictability and uncertainty in construction litigation. As we stated in Welch, supra, 202 N.J.Super. at 396, 495 A.2d 160, the Legislature did not intend "to let repose turn on serial cut-off dates accruing through various stages of the work, turning on fact-sensitive determinations and various analytic approaches to construction staging."
The parties' understanding of what constitutes substantial completion of a separate "improvement to real property" is evidenced by the contract and construction documents. In this case, the contract identified three phases of construction with separate deadlines for completion and liquidated damages applicable to each deadline. The parties used certificates of substantial completion to pinpoint the dates when buildings and other work were completed and ready for use. Temporary certificates of occupancy were obtained for completed buildings. The documentary evidence established that Phases I and IIA of the contract were substantially completed before April 27, 1998.
But as to Phase II, certificates of substantial completion were not issued for two remaining buildings until May 1, 1998. Defendants have not alleged that those certificates were improperly withheld and that substantial completion of those buildings occurred earlier. Nor is there a dispute that the hot water system was a component of the project that was part of those buildings and Phase II.
Because the hot water system was not identified in the contract and other documentary record as a separate "improvement" that was substantially completed before completion of all buildings to which it was connected, we conclude that a separate trigger date for the statute of repose did not run for the hot water system.[2] Instead, the trigger date applicable to the State's claims was when each of the contractors to whom the statute of repose applied substantially completed its work on the project. For the four contractors in the State's appeal, the trigger date as to alleged defects of the hot water system was not earlier than May 1, 1998. The State's complaint against them was brought within ten years of that date. Therefore, we reverse the granting of summary judgment in favor of Perini, Jacobs, Kimball, and Natkin.

C.
Perma-Pipe argues that it was entitled to summary judgment because the statute of repose applies to its role as a designer of an improvement in the construction project and its work as a separate subcontractor was completed by August 1997. It contends that its "most *929 prominent activity" was designing the piping layout for the hot water system to the specifications of the contract, not manufacturing the pipe. Alternatively, Perma-Pipe seeks "an allocation of its liability." In response, the State and defendants argue that Perma-Pipe merely produced standard-grade pipes and, as a manufacturer, is not covered by the statute of repose. The State contends that its claims against Perma-Pipe brought under New Jersey's Product Liability Act, N.J.S.A. 2A:58C-1 to-11, are not subject to the statute of repose, N.J.S.A. 2A:14-1.1a. We agree that the State's claims alleging defective product are not barred by the statute of repose even if Perma-Pipe completed its tasks on the project more than ten years before the lawsuit was filed.
In Dziewiecki v. Bakula, 180 N.J. 528, 532-33, 853 A.2d 234 (2004), the Court held that a manufacturer is not covered by the statute of repose. The statute protects "contractors, builders, planners, and designers." Russo Farms, supra, 144 N.J. at 116, 675 A.2d 1077 (citing Horosz, supra, 136 N.J. at 128, 642 A.2d 384); see Rosenberg v. Town of N. Bergen, 61 N.J. 190, 201, 293 A.2d 662 (1972). Simply "designing" a "standardized" product that is installed at a construction project does not constitute activity that is covered by the statute of repose. Dziewiecki, supra, 180 N.J. at 532-33, 853 A.2d 234; accord Rolnick v. Gilson & Sons, Inc., 260 N.J.Super. 564, 567-68, 617 A.2d 288 (App. Div.1992). Consequently, Perma-Pipe's claim that it designed the pipes used for the prison project does not bring it within the protection of N.J.S.A. 2A:14-1.1a. Rather, the timeliness of the State's claim for products liability depends only on the applicable statute of limitations. See Rosenau v. City of New Brunswick, 51 N.J. 130, 136-37, 238 A.2d 169 (1968).
In Dziewiecki, supra, 180 N.J. at 533, 853 A.2d 234, the Court distinguished between defendants that sold, designed, or manufactured standardized products and those that also installed the products as part of an improvement to real property. The Court stated that, when a defendant wears "two hats," and the injury is attributable to both functions, "the responsibility should be allocated between the two" roles. Ibid.; see, e.g., Hudson v. Siemens Logistics & Assembly Sys., Inc., 353 Fed.Appx. 717, 722-23 (3d Cir.2009) (applying Dziewiecki's "two hat" analysis). Overruling the contrary holding of Wayne Twp. Bd. of Ed. v. Strand Century, Inc., 172 N.J.Super. 296, 303, 411 A.2d 1161 (App.Div.1980), upon which Perma-Pipe relies, the New Jersey Supreme Court explicitly rejected application of the statute of repose if a defendant has "participated to any extent" in installation of a product. Dziewiecki, supra, 180 N.J. at 533, 853 A.2d 234; see Rolnick, supra, 260 N.J.Super. at 567-68, 617 A.2d 288 (installation of attic fan by seller not covered by statute of repose as improvement of real property). Therefore, Perma-Pipe's presence at the construction site and pressure testing of the system was not sufficient by itself to change Perma-Pipe's role from that of a manufacturer to one of a builder or installer of its product.
The trial court denied summary judgment to Perma-Pipe because the State's claims against it "sound in product liability" for allegedly defective pipes. The court's ruling is supported by Dziewiecki's "two hat" analysis. Perma-Pipe may present a defense that it designed the pipes to contract specifications and provided technical support during installation, and the court may determine whether sufficient evidence has been presented of a role other than manufacturer of the product that requires determination and allocation *930 of liability by the jury. But Perma-Pipe's averments do not entitle it to summary judgment dismissing the entirety of the State's claims. Genuine issues of material fact exist as to whether Perma-Pipe manufactured defective pipes and, if so, the extent of apportionment of proven damages between its activities as manufacturer of product and its alleged additional role as a designer of an improvement to real property. The trial court correctly denied summary judgment to Perma-Pipe.
Affirmed in part, reversed in part, and remanded to the Law Division for further proceedings. We do not retain jurisdiction.
NOTES
[1] Perma-Pipe also argues that application of the statute of repose to contractors but not to manufacturers of materials violates the equal protection and the due process rights of manufacturers. Because of our disposition of the other issues in this appeal, we need not address Perma-Pipe's constitutional challenge to the statute of repose.
[2] We need not decide whether a separate trigger date applied to each building that received a TCO and certificate of substantial completion and was in use and occupancy. That issue is not before us in this appeal.